IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**MARIANA SÁNCHEZ-PARÉS**,

    Plaintiff,

    v.

**MAPFRE PUERTO RICO, et al.**,

    Defendants.

Civil No. 18-1917 (BJM)

## OPINION AND ORDER

Mariana Sánchez-Parés ("Sánchez") alleges that the Municipality of Aguadilla ("Aguadilla") and its insurer, Mapfre Puerto Rico (collectively "defendants"), are liable for negligent maintenance of Ramey Skate and Splash Park ("Ramey Park" or "the park"). Docket No. ("Dkt.") 1 ("Compl."). Sánchez seeks damages under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. Tit. 31, § 5141 ("Article 1802"), for injuries suffered after she fell in a grassy portion of the park. *Id.* ¶ 9. Defendants denied the allegations, Dkt. 8, and moved for summary judgment, Dkt. 19. Sánchez opposed, Dkt. 25, and defendants replied, Dkt. 27. This case is before me by consent of the parties. Dkt. 13.

For the reasons set forth below, defendants' motion for summary judgment is **GRANTED**.

## BACKGROUND

Before proceeding to summarize the record, I will explain which portions of the record I can consider. Designed to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute," Local Rule 56 requires a party moving for summary judgment to accompany its motion with a brief statement of facts, set forth in numbered paragraphs and supported by citations to the record, which the movant contends are uncontested and material. *CMI Capital Market Inv. v. Gonzalez-Toro*, 520 F.3d 58, 62 (1st Cir. 2008); D.P.R. L. Civ. R. 56(b), (e). The opposing party must admit, deny, or qualify those facts, with record support, paragraph by paragraph. D.P.R. L. Civ. R. 56 (c), (e). The opposing party may also present, in a separate section, additional facts, set forth in separate numbered paragraphs. *Id.*

56(c). While the "district court may forgive a party's violation of a local rule," litigants ignore the local rule "at their peril." *Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 219 (1st Cir. 2007).

Defendants' motion for summary judgment was accompanied by a statement of uncontested facts ("DSUF"), Dkt. 19-2, to which Sánchez responded, Dkt. 25-1. Sánchez submitted additional facts ("PSUF"), Dkt. 25-1 at 7-8, to which defendants responded, Dkt. 27. Parties' responses were supported by citations to the record, and only one evidentiary objection was raised.

Defendants object to a photograph Sánchez offered, which depicts a grassy area and a sign in the Spanish language. *See* Dkt. 25-3. Sánchez cites this exhibit in support of the proposition that "[o]ther parks in Puerto Rico that have uneven grounds do have warnings [sic] signs." PSUF ¶ 3. Defendants object on grounds that the photograph has not been authenticated, is irrelevant and unfairly prejudicial, and constitutes hearsay. *See* Dkt. 27 at 2.

At summary judgment, a court may consider evidence unless it "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Where a party objects to proffered evidence for want of authentication, the proponent of said evidence need not in fact authenticate the evidence. *See Garcia-Garcia v. Costco Wholesale Corporation*, 878 F.3d 411, 418 n. 11 (1st Cir. 2018) (citing Fed. R. Civ. P. 56; 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2738 (4th ed. 2017 Update)). Rather, the proponent must merely "show that the material is admissible as presented or . . . explain the admissible form that is anticipated" for trial. Fed. R. Civ. P. 56, Advisory Committee Notes (2010). Although a sworn affidavit is unnecessary, some showing is required. *See Intern. Ship. Agency, Inc. v. Union de Trabajadores de Muelles Loc. 1740*, CIV. 12-1996 SCC, 2015 WL 5022794, at *3–4 (D.P.R. Aug. 21, 2015) (collecting cases).

Here, Sánchez has not made a showing sufficient to permit this court to consider the photograph at Dkt. 25-3. In her statement of facts, Sánchez cites to the proffered exhibit and writes

"Photo of Wito Morales Park in Ponce." Dkt. 25 at 7. She does not explain how she intends to authenticate the photograph either by submitting an affidavit or identifying a witness who could testify to its authenticity. Without any information regarding Sánchez's plans for authentication, I cannot say that the photograph could be admitted. Further, to the extent Sánchez relies on this photograph because of the Spanish-language text it depicts, I cannot consider that text, whether or not it constitutes hearsay, as Sánchez has offered no certified English translation. *See Puerto Ricans For Puerto Rico Party v. Dalmau*, 544 F.3d 58, 67 (1st Cir. 2008) (quoting 48 U.S.C. § 864) ("All pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language."). Accordingly, I do not consider the proffered photograph.

Turning to the facts of this case, I draw the following from parties' statements of material facts. The subject of this suit is an accident that occurred at Ramey Park, which is maintained by Aguadilla. DSUF ¶ 1. At the time of the accident, Sánchez lived about a three-minute drive from Ramey Park, and she visited the park approximately once or twice a month.[1] DSUF ¶ 6. The park consists of grass hills or mounds, as well as areas where children can play, such as a playpen area, seesaw area, and spider-like attraction. *See* DSUF ¶¶ 9-13. It does not include signs, notices, barriers, or warnings advising guests of any particular danger, nor to dissuade park visitors from walking through the grass to go from one activity to the other. PSUF ¶ 2.

Prior to January 3, 2017, neither Sánchez nor her children had suffered a fall or accident at the park, aside from landing on the ground after going down the slide. DSUF ¶ 7. On that date, Sánchez visited the park with her husband and children. DSUF ¶¶ 2, 5, 11. She was wearing sneakers and athletic clothing. PSUF ¶ 4. Initially, the family was in the playpen area. DSUF ¶ 11. Sánchez's husband and daughter then moved to the seesaw area, which they accessed by walking through the grass. DSUF ¶¶ 12-14. Neither fell while crossing the grass. DSUF ¶ 14. Sánchez and her two-year-old son stayed in the playpen area until Sánchez's son saw his father and sister at the

---

[1] After the accident and prior to filing this suit, she moved to Massachusetts. Dkt. 19-3 at 6-8.

spider-like attraction and started walking toward them. DSUF ¶¶ 11-13, 16. Sánchez's son began walking through the grass, and Sánchez followed directly behind, at arm's length. DSUF ¶ 17. He did not fall while walking through the grass. DSUF ¶ 18.

While Sánchez was crossing the grass, she encountered something like a slope or uneven ground, slipped, hurt her left leg, and fell to the ground. *See* DSUF ¶ 19; PSUF ¶ 1.[2] She felt her ankle swell. DSUF ¶ 20. At the time she fell, Sánchez was not running. PSUF ¶ 4. The area where Sánchez fell was clearly visible, it was not steep, and she had previously walked through the grass at the park. DSUF ¶¶ 8, 23, 24. There was no structure, garbage, or other object on the ground where Sánchez fell, and nothing obstructed Sánchez's view. DSUF ¶¶ 25-26.

After sustaining damages related to her fall, Sánchez filed the instant suit, alleging that the area in the grass where she fell was a dangerous condition and Aguadilla's failure to warn of that danger constituted negligence.

## SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)). The moving party bears a two-fold burden: it must show that there is no genuine issue as to any material facts and that it is entitled to judgment as a matter of law. *Veda-Rodriguez v. Puerto Rico*, 110 F.3d 174, 179 (1st Cir. 1997). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only if it "is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004).

If the moving party meets its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec.*

---

[2] Parties' differences with regard to whether Sánchez fell on a slope or uneven ground are discussed below.

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and may not rest upon "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient."). The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citation and internal quotation marks omitted).

On a motion for summary judgment, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood...." *Greenburg v. Puerto Rico Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). Rather, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## DISCUSSION

The substantive law of Puerto Rico governs liability in this diversity suit. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Article 1802 provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. Tit. 31, § 5141. To establish negligence, a plaintiff must show (1) a duty requiring the defendant to conform to a certain standard of conduct, (2) a breach of that duty, (3) proof of damage, and (4) a causal connection between the damage and the tortious conduct." *Blomquist v. Horned Dorset Primavera, Inc.*, 925 F.3d 541, 547 (1st Cir. 2019) (citation and internal quotation marks omitted). "[L]iability will only arise if the damages complained of were reasonably foreseeable to the defendant." *Irvine v. Murad Skin Research Labs., Inc.*, 194 F.3d 313, 322 (1st Cir. 1999). In a premises liability suit,

>[t]here is no liability for harm resulting from dangerous conditions of which [the owner] does not know, and which a reasonable inspection would not have discovered, or from conditions from which no unreasonable risk was to be anticipated. Likewise, in the usual case, there is no obligation to protect the visitor against dangers which are known to him, or which are so apparent that he may reasonably be expected to discover them and be able to protect himself.... The visitor is entitled, however, to assume that proper care has been exercised to make the premises safe for him, and he is not required, as in the case of a licensee, to be on the alert for possible defects.

*Mas v. United States*, 784 F.Supp. 945, 948 (D.P.R.1992) *aff'd*, 984 F.2d 527 (1st Cir.1993) (quoting *Goose v. Hilton Hotels Int'l, Inc.*, 79 D.P.R. 523 (1956) (emphasis removed)).

Defendants contend that summary judgment is appropriate because (1) Sánchez cannot show breach, as no dangerous condition existed at the park; (2), alternatively, any dangerous condition was readily apparent and defendants were thus under no duty to warn; and (3) Sánchez cannot show a causal connection between the alleged breach and damages suffered. I will address each argument in turn.

Sánchez contends that Aguadilla breached its duty of reasonable care by failing to install signs in the park warning her to keep off the grass or containing a similar advisal. Generally, a person or entity breaches the duty of care by creating a reasonably foreseeable risk of harm. *Vazquez-Filippetti v. Banco Popular de P.R.*, 504 F.3d 43, 49 (1st Cir. 2007). Where, as here, a plaintiff alleges that her injury flowed from a dangerous condition on a defendant's premises, the plaintiff must show (1) that a dangerous condition existed and (2) that the defendant had either actual or constructive knowledge of the dangerous condition. *Id.* at 50; *see Mas*, 984 F.2d at 530 (slip and fall case in a federal commissary).

Parties disagree over whether Sánchez can show that a dangerous condition existed at the park. According to defendants, Sánchez can make no such showing because, during her deposition, she testified that she slipped on a gradient or slope in the grass and admitted that neither her husband, daughter, nor her two year-old son fell when crossing the same area. In essence, they suggest that a slope cannot be deemed a dangerous condition. Sánchez responds that defendants have simplified her deposition testimony and taken it out of context. She maintains that she fell on "uneven ground" and points to the following deposition testimony regarding the area where she

fell: "you can see the uneven ground there [referring to a photograph marked as Photograph 2 at Dkt. 19-3 at 70][,] where it's taller here and shorter here." Dkt. 19-3 at 45: 12-14. Whether the area where Sánchez fell constituted a slope, gradient, or "uneven ground," the question of whether that area might be deemed dangerous is best left to the jury. *Accord Robles v. Pablo Fajardo*, CV 14-1831 (MEL), 2016 WL 2637814, at *3 (D.P.R. May 6, 2016) (whether mildly sloping fractured concrete constitutes an unreasonably dangerous condition for pedestrians is an inquiry "best left to the common sense scrutiny of jurors"). Sánchez has pointed to deposition testimony suggesting that the grass where she fell is uneven and that she fell while crossing that area. To decide that "uneven ground" or a slope cannot be deemed dangerous because Sánchez's husband and children crossed it without difficulty would be to weigh conflicting evidence. On summary judgment, this the court cannot do. *Greenburg*, 835 F.2d at 936 ("Fed.R.Civ.P. 56 does not ask which party's evidence is more plentiful, or better credentialled, or stronger.").

Somewhat more problematic for Sánchez is defendants' knowledge regarding the allegedly dangerous condition. In her complaint, Sánchez alleged that "[d]efendant's employees and personnel in charge of the maintenance were aware and/or reasonably should have known about the dangerous condition." Dkt. 1 ¶ 11. Now at summary judgment, Sánchez points to no evidence to support this assertion. To succeed on her theory of the case, Sánchez must show that defendants had actual or constructive knowledge of the uneven ground where she fell. *Vázquez–Filippetti*, 504 F.3d at 50. "[T]o establish constructive knowledge, a plaintiff must prove either the existence of the dangerous condition for an unreasonable or excessive length of time or, in the absence of evidence regarding time, the owner's insufficient prevention policy or failure to implement the policy." *Carlo-Blanco v. Inmobiliaria Comercial, Inc.*, 59 F. Supp. 3d 399, 403 (D.P.R. 2014) (citing *Ramos Rosado v. Wal–Mart*, 165 D.P.R. 510, 513-15 (2005)). Sánchez offers no deposition testimony from a park employee or any other evidence that might suggest there was actual knowledge. And evidence speaking to constructive knowledge is scant. Sánchez points to no evidence related to defendants' prevention policies—for instance, by showing that Aguadilla lacks policies requiring regular inspections of the landscape or that a park employee failed to carry out

a required inspection. And she does not address the question of whether the uneven ground existed for an excessive amount of time. Nonetheless, parties appear to agree that the area where Sánchez fell—whether it was a slope or uneven ground—is part of the natural landscape. Presumably then, a jury could find that it is a permanent condition about which defendants should have known.

But Sánchez's case falls at the next hurdle. Defendants argue that, if the hazard in the grass is a dangerous condition, it was so obvious that they were under no duty to warn her of that condition. "Under Puerto Rico law, a landlord is not an insurer of the safety of business visitors, and his duty extends only to the exercise of reasonable care for their protection." *Figueroa-Garcia v. United States*, 364 F. Supp. 2d 140, 143 (D.P.R. 2005). Usually, "there is no obligation to protect the visitor against dangers which are known to him, or which are so apparent that he may reasonably be expected to discover them and be able to protect himself." *Id.* Parties agree that Sánchez had frequently visited Ramey Park prior to her fall and that she had previously walked through the grass at the park. DSUF ¶¶ 6, 8. They also agree that the area where Sánchez fell consists of grass hills or mounds, DSUF ¶ 9, and Sánchez also characterizes the area as "uneven ground," PSUF ¶ 1. Parties further agree that the slope was clearly visible according to Sánchez, there were no objects or structures on the ground at the site of the accident, and nothing at the site of the accident was obstructing Sánchez's view. DSUF ¶¶ 23-26. Additionally, Sánchez described the area where she fell during her deposition as follows:

> Attorney: Right. What do you mean by slope?
>
> Sánchez: It was uneven, so you could clearly see that there was a change in the grass, you could see that it was taller on this side and shorter on the other side.
>
> Attorney: I'm trying to, you know, to picture . . . , what do you mean that it was taller on one side?
>
> Sánchez: Because you could see that it was uneven.
>
> Attorney: All right?
>
> Sánchez: You could see the little bump on the grass.
>
> Attorney: A bump?

>   Sánchez: I don't know how to explain.
>
>   Attorney: For the record, this is attorney Fernandez. The deponent is signaling her hand like going upwards with her hand, I think?
>
>   Sánchez: Yeah.
>
>   Attorney: And going down.
>
>   Sánchez: If we look at the pictures, you can see the slope. . . Picture 2, you can see the uneven ground there, where it's taller here and shorter here. I don't know if you can see it well.
>
>   Attorney: But you're telling me that it's uneven because they're going downhill?
>
>   Sánchez: Yes.
>
>   Attorney: Because it is a slope?
>
>   Sánchez: Yes, because it is a slope. It's not that there . . .
>
>   Attorney: It is not a flat surface?
>
>   Sánchez: It is not a flat surface, it is a slope that we're walking, that we were walking on.
>
>   Attorney: All right. So by "uneven," you're meaning that it is a slope?
>
>   Sánchez: Yes.
>
>   Attorney: And you're going like downhill?
>
>   Sánchez: Yes.
>
>   Attorney: All right. Was there any hole in the grass?
>
>   Sánchez: No.
>
>   Attorney: And you used the word "clearly"; when you were describing the slope, you told me it was clearly?
>
>   Sánchez: Yep, that you can see it's uneven, you're walking on the slope, it's clearly visible, yeah.

Dkt. 19-3 at 44:16–46:10

All of this deposition testimony indicates that the area where Sánchez fell—whether one calls it a "slope" or "uneven ground"—was clearly visible. And Sánchez has not pointed to any evidence indicating that the hazard on which she fell was anything other than readily apparent, nor has she addressed this question in her brief. At most, Sánchez stated in her opposition to defendants' statement of facts that the area "was not clearly visible in the photo used in the deposition." Dkt. 25-1 at 5. But that speaks to the clarity of a photograph, not to the degree to which the uneven ground is readily apparent to park visitors. Sánchez herself stated during deposition that "you could clearly see that there was a change in the grass, you could see that it was taller on this side and shorter on the other side," "you could see that it was uneven," and "you can see it's uneven, you're walking on the slope, it's clearly visible." Dkt. 19-3 at 44:17-22, 46:9-10. In other words, the only evidence presented requires a finding that the uneven ground on which Sánchez fell was readily apparent to park visitors.

Moreover, Sánchez's deposition also indicates that Sánchez knew about the allegedly dangerous condition. The relevant exchange follows:

> Attorney: All right, going back to the area where you fell down, besides the grass, you know, having a slope, was there any other kind of a structure on the floor, and I mean garbage, any kind of a piece of objects on the ground?
>
> Sánchez: No, not that I remember.
>
> Attorney: Nothing?
>
> Sánchez: No.
>
> Attorney: And the area was clear, you know, you told me that was clearly visible, there was no obstruction in your visibility; is that right?
>
> Sánchez: Yes.
>
> Attorney: All right. Before walking . . . , you have been there many times?
>
> Sánchez: Uhum.
>
> Attorney: And you have been in that same area other times; right?
>
> Sánchez: Yes.

  Attorney: So you knew there was a slope in the grass, right?

  Sánchez: Yes.

Dkt. 19-3 at 55:14–56:10. Sánchez argues that this testimony does not indicate that she knew there was a slope in the grass because she was only "describing the conditions or design of the landscape of the area and that there was nothing obstructing her visibility." Dkt. 25-1 at 6. It is true that Sánchez's admission that she knew there was a slope in the grass is preceded by a discussion about the absence of objects obstructing her view. But that does not change her open concession that she had visited the area other times and knew there was a slope in the grass. And Sánchez has not pointed to any evidence indicating otherwise, for instance, by offering an affidavit to explain what she did or did not know about the area where she fell prior to her fall. In other words, the only evidence of record indicates both that Sánchez knew about the conditions in the grass where she fell and that those conditions are readily apparent to park visitors. There is no genuine dispute as to any material fact related to these two issues. Accordingly, even if a jury found that the grassy incline was dangerous, no reasonable jury could find that Aguadilla was under a duty to warn Sánchez of that danger.

  I need go no further. Defendants have shown that there is no genuine issue as to any material fact relating to the readily apparent nature of the hazard on which Sánchez fell and her knowledge of that condition. They are entitled to judgment as a matter of law because Aguadilla was under no duty to advise visitors to keep off the grass.

## CONCLUSION

  For the foregoing reasons, defendants' motion for summary judgment is **GRANTED**, and the complaint is dismissed with prejudice.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 2nd day of February 2021.

                                         *S/ Bruce J. McGiverin*
                                         BRUCE J. MCGIVERIN
                                         United States Magistrate Judge